The next case on the calendar is United States v. Ahmed. Good morning. May it please the court, this is Donna Newman and I represent Syed Iram Ahmed who comes before this court seeking that this court vacate his sentence, his fine and remand to a district court judge. We begin with understanding what the guidelines were because that's our starting point. So if we begin with that, we understand that Judge Irizarry, after discussions with the parties, settled on a guideline level 29, criminal history one, which is 87 to 188 months, excuse me. During this somewhat lengthy sentencing process, at no time did the court indicate that it would in fact upwardly vary from that guidelines that it specifically found. As to a departure, it specifically said no departure, upward or downward, is appropriate in that case. So we then turn to the statement of reasons. Let's look at that. Did that indicate any kind of variance? And we look at that. Can you give me a page reference? You say the judge said no departure, upward or downward is appropriate? Yes. Your Honor, if I may hold for that and I will answer on that because I do have that and I don't want to give the wrong one. I think I know, but I won't give it to you. Let me get to this statement of reasons. Also during the same sentencing hearing, after the sentence was imposed and it was substantially higher than that guidelines range, that was also brought to the attention of the district court, right? This is 50 percent higher and the district court says this is the sentence, the sentence stands. That's correct, Your Honor. I did want to go right to that point because in fact when she says this and the objection brings up that this is 50 percent higher and in fact includes conduct that was the money laundering is what she gave additional sentence, consecutive sentence for, she said that that's included in the offense conduct and that's where we get our first problem. And that is the multiple, I'm sorry, the multiple account guideline, which she did not, she ignored or misapplied, we're not sure, but the PSR mentions that they are not calculating it because the higher guideline, which under 2D1.2 is considered when you group, is in fact the fraud guideline. So they don't look at that and that's the loss guideline. So the court, A, doesn't speak about it at all in her orally, in the pronouncement, but in the statement of reasons, in fact says on page one of the statement of reasons, it checks the court adopts the pre-sentence investigation report without change. Well, we know that's incorrect because A, she did change the amount of loss. That definitely affected the guideline range under guideline level 29, but in fact that, the PSR had calculated under the multiple count adjustment, the money laundering offenses. So that's the first error. So we know that that's, then we look at page three of the statement of reasons and when it goes to court determination for a variance, nothing's checked. So let's look at the oral pronouncement. Well, the oral pronouncement goes on. So it misapplied 2D1.2, which is a basis for this court to remand as a procedural error. But there is also problems in the evidence or understanding what this case was about. This was, after all, just not a just. It was a serious upbilling of Medicare. Not Medicaid, Medicare. So the first fact she talks about is that after all, his patients here he targeted were infirm and poor and more vulnerable. But with all due respect, I don't think at age 65 when you get Medicare, you're particularly vulnerable. But putting that some clients here who were victims who were rendered penniless, but for state action. I want to take you way back to Judge LaValle's point about the judge's statement that there was no ground for departure. I think it's a JA-150. And in context, it appears to be that the court is talking about guideline departures as opposed to variances outside the guidelines The judge does say when she concludes her guideline discussion that the guidelines are just the starting point. And it seems to me that everyone now knows that. So the suggestion that your client didn't expect a variance doesn't seem to me to be too persuasive. The judge then went on to balance the 3553A factors and explained why she wasn't prepared to sentence within the guidelines, appearing to be among many reasons, but one of the main ones, that your client's laundering took place not as part of the crime he committed, but after he realized that federal authorities were investigating him. And what he effectively did was take the proceeds of the crime and put them beyond the reach of United States law. And the judge wasn't prepared to treat that as free, which is how the multiple count guidelines would have treated it. What am I missing? What you're missing, Your Honor, is that while Your Honor has explicitly stated it as such, there is nowhere in the statement of reasons or within her statement that is explicit in that, including when there was an objection pointing this out. And the guidelines do account for it and accounted for, in their enhancements under 2B1.1, the various enhancements that he was a physician, that this was a Medicare fraud. And I want to stress that the confusions here, there's no evidence that he targeted specific patients. There was no evidence that you also said that he performed procedures on dead people. In fact, her comment was, and the evidence was, that he was a good doctor, but this was a case of up-billing. In other words, he charged for procedures that he didn't perform. Do you demand with instructions to provide the reasons, to write the reasons and to correct the errors on the judgment that you've pointed out? I'm not saying this facetiously. I know that's not the main thing you're after, but I'm not saying it facetiously. Should, does propriety require that we send it back and have the judge check the box you should have checked and put a statement? No, Your Honor. No, if I might answer. No, Your Honor, I don't think that that's appropriate. And the reason I don't is that the entire sentencing procedure was infected by the I understand that that's not what you're really after. I understand that. I'm just asking a further point. Assuming we don't grant you the relief you really want, should we nonetheless, does propriety require that we send it back to have those things conform to the judge's reasons, what seemed to me, as Judge Raggi was saying, to be the reasons for the sentence? Well, my point is that, not only am I not asking for it, but I think that's improper because her opposition with respect to this case and what happened, I believe, was incorrect, that she relied on things like, as we said, that it was Medicare when I think she was thinking Medicaid, and this is not a Medicaid, that the... She understood what the program was. She talked about it as being one that deals with the poor and one that, look, this is what I took away from the judge's statement, was she was concerned about the scope of the crime, pointing out that your United States, which is quite a feat, that there was nothing mitigating about his commission of the crime. There was no desperate need, et cetera. It was a pure greed crime. And she considered that particularly egregious, given that it did take place in the context of a federal program that serves the poor, that has budgetary limits, and that's subject to criticism when there's this kind of fraud. Finally, she also... Or before finally, he implicated his brother in the crime, who could have wound up in jail. She found that an aggravating factor that wasn't considered by the guidelines. And then the fact that he put the money beyond the reach of the federal government, because as I understood the record, he hadn't brought it back, right? That... Your Honor, I'm... Am I right about that, that the money... He didn't bring the money back that he had sent abroad to demonstrate his acceptance of responsibility or anything like that? Am I right that that's not in the record? Well, that may not be in the record, Your Honor, but on the same point... Are you saying that these circumstances, if articulated more clearly by the district court, wouldn't support a variance? No, Your Honor, because... Okay. So to that extent, if your concern is that they're not adequately stated, why would you be entitled to the relief of not having this remanded? I mean, I'm not sure a remand is necessary, but you said you don't think a remand for clarification is warranted. I'm perplexed. Because in fact, I... One, the entire view of this case had other parts of it. So you're looking at just in one aspect. There were many more points brought out about Dr. Ahmed that the court didn't consider totally. Now, I know he considered the child. There's no question that Judge Rosari considered the child, but I don't think it's appropriate to consider that he came from a middle-class intelligent and that it was... Of course, all fraud cases that I deal with, basically, are greed. And so, though, if it's not proper to consider that somebody has, you know, from a lower class and commits a fraud, that it's not proper to consider that he had, that he was a doctor and committed fraud. That's what... It's not correct that all fraud cases are greed. All fraud cases are out for money, but in some cases, there are circumstances that make it much more palatable that a person use circumstances, their home is being foreclosed, their child is sick and needs medical care that they can't afford, things like that. This was like pure greed as opposed to some greed. Your Honor, unquestionably, and I've dealt with many of them, I've been before this court with many of them. That's not my point. My point is if you can... You cannot consider in a vacuum that he comes from middle class or that he's intelligent. I mean, that's the problem, that you're focusing us on that. It's the scope of the greed. He is the highest or second highest biller in the United States fraudulently doing this. This isn't he took a little bit of money or, you know, he was trying to... This is a truly disturbing scope of fraud. Yes, Your Honor. And with no mitigating circumstances animating it. Well, Your Honor, I disagree with that, that the defense put on a very strong case of mitigation, but there is no, the evidence and what she relied and her understanding, he didn't perform procedures on dead people. He didn't remove a leg from somebody. He billed for procedures and the persons and the individuals had already died. Yes, Your Honor. But we're looking at, as opposed to all the cases, all that they included, 16 and you need to, if I might just answer the question, I know I'm over time. So if I might just, you need to consider that they looked at just 16, only a portion of the 16 actually, and that the remainder had to do with a very specific kind of billing. That's not to say he didn't perform procedures. And that I think was lost. So it had to do with, and I don't have the time unless the court grants me that, to go into the type of billing procedures that are under Medicaid so that if you put the wrong code and there was a finding that this was intentional. But that's not to say he didn't do procedures. And I wanted that to be clear. It's not like he came nothing and did nothing. There, I know one case, they mentioned that they just said hello or something, you know, cordialities, but the point of the matter is that's it. The remainder of the cases, there was a lack of hospital records and, in fact, there was evidence presented that he did do procedures and that he was a well-respected surgeon. So to look at it just skewed like that, I think, is improper. But I, thank you, Your Honor. Good morning, Your Honors. It may have pleased the Court. Ross Goldman for the United States. As an additional matter, the district court properly applied the grouping guideline and the total punishment guideline. With respect to the grouping guideline, I don't think there's actually even a dispute on this. Dr. Ahmed, in his opening brief at pages 12 and 38, says that the district court grouped the six counts and he elsewhere says that the probation office also properly grouped those six counts. With respect to the total punishment guideline, as we make clear in our brief, that guideline is advisory. There's explicit statutory authority in 18 U.S.C. 3584 that vests district courts with the authority to run sentences concurrently or consecutively and that that decision is made pursuant to the 3553A factors. Now, I want to address what we understand to be the centerpiece of Dr. Ahmed's claim, that the district court was somehow confused when it imposed sentence and that the court thought it was imposing a within-guideline sentence when, in fact, it imposed an above-guideline sentence. And there are four points I want to make on this. First is, at joint appendix page 132, the district court announces its sentencing guidelines calculation of 87 to 108 months. Now, this was not a reflexive adoption of the PSR. To the contrary, the district court spent several pages explaining why it was disagreeing with the PSR, in particular with respect to the loss calculation, explained how using actual rather than intended loss resulted in a nine-level decrease in the offense level and resulted in a lower guidelines range of 87 to 108 months. It was substantially lower. I mean, the PSR was 188 to 230. To 235, that's right. And then confirmed with the parties that everyone agreed that that's the correct guidelines range based on the use of actual loss. Then, approximately 20 pages later in the sentencing transcript, the district court sentences Dr. Ahmed to 156 months. And I think it's fair for this Court to presume that the district court both understood that 156 was greater than 87 to 108 and remembered, when it imposed 156, that it had just calculated a range of 87 to 108. That's the first point. The second point is that after the district court imposed sentence in this case, Dr. Ahmed objected. And in his word, he objected really for two — he made two specific objections. They were of the same ilk. And his objection was he said, quote, obviously, to the Court, obviously, the Court has imposed a sentence that is roughly 50 percent over the guidelines range. And he objected to running counts 5 and 6 consecutively to the sentences on counts 1 and 4. Now, if the district court had thought it imposed a within-guidelines sentence, one might have expected the district court to clarify with Dr. Ahmed, no, no, no, this is not an above-guidelines sentence. This is a within-guidelines sentence. Or to question or to push back or to seek clarification or something. But, of course, none of that happens. What happens is the district court overrules the objection and, in particular, notes that the conduct underlying the money laundering convictions had this sort of what we — what we characterize as this quasi-obstructive nature to it, sending $2 million overseas days after learning that he was under federal investigation. That is a second point that we think pretty clearly shows that the district court knew, as Dr. Ahmed himself called it, as obvious, that this was an above-guidelines sentence. The third point here, and this is at Joint Appendix page 117, the district court articulated toward the beginning of the sentencing hearing the difference between a departure, which looks to provisions of the guidelines to determine whether to go above or below the guidelines range, and a variance, which is guided by the 3553A factors to determine whether to go above or below the guidelines range. And so when the district court said — and that was a — that was a correct explanation. It mirrors the way this Court described departures and variances in the Stewart decision. So when the district court says at Joint Appendix 150, I've considered the party's arguments for departures. I don't find there to be any basis for a departure in this case. But it also never — correct me if I missed it someplace, but the district court also never expressly says, I'm going to — I'm going to impose a variance. I don't think the guidelines range is adequate. I'm going to go above it. No, that's true. And we note that in our brief. There's no explicit statement on that point. Of course, under this Court's case law, with respect to not requiring special incantations or magic words, I think what matters is stepping back is, did the district court know, and can this Court be comfortable that the district court knew, that it was imposing an above-guidelines-variance sentence? Now, the center of Dr. Ahmed's argument — Sotomayor, unlike this Court, cannot presume that the guideline sentence is the appropriate one, correct? No, that is correct. To that extent, it's not that the guideline sentence is the presumptive one for the district court, such that it has to specifically state that it's varying? That's — no, that is correct. That's exactly correct. And again, the centerpiece of Dr. Ahmed's argument here is, he continually refers to this statement by the district court that it found no basis to depart. And he equates that with a statement that the court found no basis to impose a non-guideline sentence. And that, in our view, is the fundamental flaw in Dr. Ahmed's argument, because it confuses departures from variances. And the district court, again, pointing to Joint Appendix 117, was, I think, pretty clearly not confused on that issue. The final point I would make, and this is the fourth point as to why the district court was not confused, is that — this is at pages 163 and 164 of the Joint Appendix — the district court says that coming into the sentencing hearing that day, the court was inclined to impose the maximum sentence on the money laundering count and the maximum sentence on the money — I'm sorry, on the health care fraud count and the maximum sentence on the money laundering count in the rundown consecutively, which we understand to be a statement that the district court came into the sentencing hearing contemplating a sentence of 240 months. But then, as the court explained, it was only — it was because of defense counsel's arguments at the sentencing proceeding that caused the district court to impose the sentence the way it did. And what I think that shows is that the district court came in thinking 240 months, which is not only above the 87 to 108-month range that the court calculated at sentencing. It's also above the 188 to 235-month range that the PSR had calculated. And so you put all four of those things together, and that's why, in our view, it is beyond any real question here that the district court knew that it was imposing an above-guidelines variant sentence and explained why, largely because of the sort of quasi-obstructive nature of the money laundering conduct in this case. Should we remand instructing the district court to modify the judgment to reflect? So that is our position. We actually have asked this court to order a limited remand for — really, for two reasons. One, to correct what we believe to be obvious clerical errors in the Statement of Reasons form. And also, as we explained in our briefing, I'm happy to talk about it if the Court has questions, but a vacater of the fine and a limited remand for the district court to reconsider the fine amount in light of the correct — Sotomayor. That's based on the use of the incorrect guideline on that one. Is that right, on the fine? It's based on the incorrect guideline fine range, right? So when the district — Instead of 20,000, you're saying it should be 15,000. That's correct. And it's a — Your adversary says that no fine was warranted because it's not supposed to be imposed where restitution and forfeiture would render the defendant penniless. Let me ask you, there's both forfeiture and restitution imposed in this case? That's correct, Your Honor. Why? Well, because there was — they have different purposes. Restitution is meant to make the victim whole, and forfeiture is intended as a sort of punishment, more of a disgorgement There are ample cases out there that have upheld — and there's no challenge to this, but to answer Your Honor's question. I know that, but I'm asking in this particular case, if there were forfeiture, wouldn't that make restitution to the victim or not? Well, not necessarily, because as a technical matter, the money goes to different places within the Federal government, so — Within the Federal government. So — no, that is correct. Not as if it went to the Federal government and therefore didn't go to a, you know, a nongovernment victim. Here it is going, so that's why I was wondering. So the forfeiture — no, you're obviously correct, Your Honor. The forfeiture would go to CMS. The restitution payment would go to the Department of Justice has a forfeiture fund. The government has the ability to appropriate forfeiture dollars to pay down restitution. Again, none of this is briefed. None of this is raised by any of the defendants. Why don't you deal with the fact that their claim is they couldn't even pay 15,000, because if they pay the forfeiture and restitution, he'll be penniless? So a couple of responses to that, Your Honor. First is, this claim is subject to review for plain error. There was no objection in the fine. So the question before the Court is whether the district court committed clear and obvious error by not sua sponte deciding that the defendant had and in the future would continue to lack the authority to pay the — what the district court thought was a low-end guidelines fine of $20,000. And we think there's no — there's no such clear — we think there's no such clear reason. Dr. Ahmed is a — is a highly educated, skilled person. He will be out of prison when he's roughly 60 years old. And that — so there is a reasonable prospect that he will be able to earn employment, earn dollars to pay down the fine. He has substantial family support. His child is able to be cared for by — by the child's mother, so that he's not — You're saying you're — that the reasonable prospect that he'll earn first $15 million and then enough to pay a $20,000 fine over and above that? So it's a — our argument is the district court didn't clearly or obviously err in failing to conclude otherwise. Now, I will note, and again, this is not raised or really brief, but there are statutory mechanisms — mechanisms in place if in the future a defendant is unable to pay a criminal fine, then — because he is indigent or just does not have the dollars. Can I ask you the question that I asked Ms. Newman that wasn't intended to be idle? Has the $2 million come back? So we — we have — and there's a footnote in our brief that we — it was a representation to the court that we were able to recoup most of the $2 million that went to Pakistan. Now, we don't know, as we say in our brief, whether there's — That has been applied to what? On that, the record is silent, and I — I don't know the answer to that particular question standing here. You know, presumably, the reason you prosecute these cases is to achieve the judgment, and I — I'm perplexed that you, with a judgment that's got this kind of restitution and forfeiture, you don't know what happened to that money. Okay. What's — Can I ask about the special condition of — of supervised release? Of course. And in the explanation for the basis for that? Of course, Your Honor. So the — the condition is that the defendant has to seek probation officer approval before undertaking a position of self-employment, and there — I know — I realize that there was no objection to that below, so you're arguing for a plain error standard, but how was that sufficiently explained by the district court? So it — the district court — and we're — we're — we're candid about this in the brief. The district court didn't, during the sentencing proceeding itself, explain that. We do know in the statement of reasons that the district court said that, quote, the supervised release conditions concerning employment are imposed in light of the use of his medical license and numerous medical practices to facilitate the instant offense. I think the insight here — and this is also laid out by the — by the probation officers in its recommended sentence, where it recommended these conditions, is that he was able to facilitate his offense here because he was self-employed. And when someone's self-employed, there's no oversight, there's — there's no hierarchy, there's no checks on what an individual can do, and so it makes it easier for someone to carry out that kind of crime. And that's the insight, I think, that's — that's driving the — the three or four cases that we cite, each from other circuits that upheld substantially similar conditions. And so, again, we think the condition is right. It's permissible under the statutory framework and the guidelines framework for occupational restrictions, in that it's reasonably related to the crime, and — So you're saying that if he were self-employed, probation might ask that he put into place certain billing or, you know, financial checks on how his business operated to avoid the possibility of criminal conduct? Is that — is that the purpose of this? I — I think that's right, Your Honor. And I think it would probably depend on the — the nature of self-employment. If he were to open — this is, I understand, to be a highly stylized and perhaps ridiculous example, but a pretzel stand outside, maybe that's something that probation wouldn't necessarily need to care about. If he wanted to open a more robust — probably not a health care business, but a more robust business that involves much more dollars coming in, maybe that would be something that probation would have to look at more closely. So I think that is the insight behind the condition, and — and so we think the condition is right. And if I could just end on this, the fact that it's — that Dr. Ahmed has not cited a single case in his favor on this, I think, by itself shows that he can establish reversible plain error. Is there an obligation to the probation office of the authority to decide — to decide these issues? So there's — there's certainly no challenge. There's no delegation challenge in this case to the special condition. And — Nonetheless, is that appropriate? I think it — I think it is appropriate. I don't know that there's a — standing here today, Your Honor, I can't think of an obvious reason why — an obvious reason why it would be clearly or obviously inappropriate in this case for this kind of delegation and this kind of — with this sort of limited seeking approval for — for self-employment. It would be rather odd to give the probate — for the judge as part of the sentence to give the probation office the authority to decide what self-employment is — is going to be permitted and what self-employment is not. Well, certainly if there's a dispute later, if, for example, Dr. Ahmed seeks self-employment and probation office does not approve it, Dr. Ahmed can come back to the court under 18 U.S.C. 3583E2 and seek a modification of that condition if — if that kind of circumstance were to arise. Thank you, Your Honor. Thank you. Your Honor, the page number where the court says there's no upward or downward departure is JA-150. The — my point basically is not what the government says. We argue basically that the entire sentencing is — and the determination by the government that this is what the court meant is speculation and that it's not clear and that we're reading into the court's statements to find support. There is no question that she was upset about the money laundering, but there could have been an enhancement, and there was nothing about it. This was an account of money laundering where he secretes the funds. There's a whole record trail here. This is easily found. And so the money was obtained, which, as the government concedes, and all the money — there was no hiding. In other words, there was — the trail was obvious under his name. And one of the accounts, in fact, was open — the account that he transferred was open up here. So I think that's important. You could have — they could have argued for two points of enhancement. They could have charged obstruction, ultimately. They didn't. It was money laundering. They charged it under this, and that's what he was found guilty of. So I still am contending that this reading that she intended to do this upward variance is so clear. I don't believe it's clear, and I believe that the record is clear that she could have stated when the objection was raised, but wait, don't you understand? This is a variance. And I've given you the reasons, not only — She could have said that, but she wasn't obligated — I mean, it's very hard to read the sentencing transcript and not come away with the conclusion that she knew precisely what she was doing. Well, Your Honor, then if she knew what she was doing, why would she say that Medicare is only for the poor? It's not. Well, there are poor individuals that rely on Medicare, and it is for the infirm. Absolutely. Okay. There are. But — No doubt it's Medicaid. I mean, she mis — this is a common mis — people commonly misspeak. But I mean, she — the program your client was involved with was Medicaid, and she was talking about that. No, no. Medicare. She was — Medicare. And so my — that's my — my focus is that when you're looking at this and you're saying it's focusing on these victims, he was a doctor who did wound care. And so, yes, they are going to be infirm. That's the nature of his practice. So some of her concerns were this targeting. And when you look at the other cases that we cited as far as parity, some of them, there were much more as far as the amount of fraud that was involved. I don't excuse it. We are not here to defend the conviction. It is really the sentence and only the sentence as to that which could be up to 50 percent difference between the lower end. And remember, probation, even though they had a much higher guideline, recommended a downward variance to 120 months. So that has to be considered under the same facts that they have that was before the court. As with respect to the fine, to say that when he gets out at 60, a man who only was a doctor, who obviously no ability to be involved in any kind of health care. All right? That's precluded and barred. We understand that. Can now go and make a living and support even $15,000 fine I think is not founded. It's not founded by the reason. And it was argued to the district court and not respond. In fact, they admitted he was penniless. As to the, which we raised the condition of self-employment. Again, it's very, the point of the matter is he comes out, he's penniless. We have this enormous restitution, forfeiture judgments. He has to pay them or try to pay them. And guess what? How? And so he has to have the ability to do this. Obviously, in all cases, probation has and can look at their tax return, how they're earning their money, whether or not Freud's involved in any case, not just this case. So I think it is a factor in determining that, A, that that condition was unwarranted. But I do, again, want to end with that here, saying that it was a variance, really is looking into the record. And the fact that the district court on the statement of reasons clearly said that she adopts the PSR, that she, that there was no variance, and it was within the guideline range. By the way, the second one I mentioned that I didn't mention before is on page two of the statement of reasons. Really explains that, in my belief, that it was implied when she said she was going to adopt the PSR because they did the multiple count. She didn't really get the full concept. And that's our point. Thank you, Ms. Newman. And thank you. Thank you both. And we will take the matter under advisory.